Rel: July 24, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2026

———————————————

### CL-2025-0560

———————————————

## War Paint Movie, LLC

### v.

## Alabama Film Office, a division of the Alabama Department of Commerce; Ellen McNair, in her official capacity as Secretary of the Department of Commerce; and Meghann Bridgeman, in her official capacity as Manager of the Alabama Film Office

### Appeal from Montgomery Circuit Court
### (CV-25-900213)

BOWDEN, Judge.

War Paint Movie, LLC ("War Paint"), appeals from the judgment of the Montgomery Circuit Court ("the circuit court") dismissing its complaint against the Alabama Film Office ("the Film Office") -- a

division of the Alabama Department of Commerce and, thus, a state agency -- which was created by the Entertainment Industry Incentive Act of 2009 ("the Act"), Ala. Code 1975, § 41-7A-40 et seq., to support the state's film industry; Ellen McNair, in her official capacity as the Secretary of the Alabama Department of Commerce; and Meghann Bridgeman, in her official capacity as the Manager of the Film Office. See Ala. Code 1975, §§ 41-7A-40 to -49.[1] War Paint claims that it received preapproval for financial incentives from the state consisting of tax rebates and tax exemptions in return for agreeing to produce a movie on location in the state. It further claims that it spent approximately $1,800,000 on film-production activity in Alabama. After completing its film work in Alabama, War Paint filed a claim for reimbursement with the Film Office, but the claim was denied. War Paint sued the Film Office, McNair, and Bridgeman, seeking, in essence, to overturn the denial. The circuit court dismissed War Paint's complaint, and War Paint

---

[1]The regulations for administering the Act are located at Ala. Admin. Code (Dep't of Com.), r. 281-3-1-.01 et seq. The administration of the rebate described in § 41-7A-43, Ala. Code 1975, is also governed by the administrative regulations issued by the Alabama Department of Revenue. Ala. Admin Code (Dep't of Com.), r. 281-3-1-.01.

filed this appeal. We affirm the circuit court's decision to dismiss War Paint's complaint.

On or about July 23, 2022, War Paint applied for financial incentives from the Film Office to produce a movie in Alabama, War Paint. War Paint describes its film as "a story about the murder of a Hollywood action star and his identical twin's efforts to find his brother's killer by taking on his murdered brother's identity."[2] War Paint's brief at 8. In its application, War Paint proposed to spend over $3,000,000 on purchases, wages, and other expenditures in Alabama, which would result in a potential total financial incentive to War Paint in the amount

---

[2]War Paint's application included a slightly more descriptive synopsis of the film:

> "WHEN A HOLLYWOOD ACTION STAR MICHAEL TINE (SCOTT ADKINS) IS MURDERED, HIS IDENTICAL TWIN, MARCUS TINE (ALSO SCOTT [ADKINS]) TAKES ON THE LIKENESS OF HIS BROTHER'S MOST FAMOUS CHARACTER, STRIKING FEAR INTO THE HEARTS OF HIS KILLERS BY SEEMING TO RETURN FROM THE DEAD IN HIS QUEST FOR REVENGE. ALL WHILE MICHAEL'S SECRET GIRLFRIEND, ELLIE (JAMIE KING), A POLICE DETECTIVE AND HER PARTNER (NEIL MCDONOUGH) IS ON THE CASE, BOTH TRYING TO SOLVE HIS MURDER AND ALSO WORKING TO ARREST THIS UNKNOWN VIGILANTE."

(Capitalization in original.)

of $900,736.90. War Paint also stated in its application that its production activities in the state would take place from August 24, 2022, to September 15, 2022. Both War Paint and the Film Office signed the application.[3]

The financial incentives contemplated by the approved application were contingent on actual expenditures and film-production activities taking place in the state. Additionally, a production company must submit a final audit to the Film Office within 120 days of the completion of production activities. Ala. Admin. Code (Dep't of Com.), r. 281-3-1-.06(7). Failure to timely submit the audit could result in the forfeiture of financial incentives. Ala. Admin. Code (Dep't of Com.), r. 281-3-1-.06(8). The Film Office, McNair, and Bridgeman ("the Film Office defendants") have summarized the procedure and requirements regarding the potential financial incentives:

> "[The Act] authorizes discretionary incentives in the form of conditional tax exemptions from state sales, use, and lodging taxes and rebates of up to 25 percent of qualified production expenditures for approved projects. These incentives are available only to qualified production companies that comply with all statutory and regulatory

---

[3]War Paint executed the application on July 23, 2022, and its application was certified by the Film Office on August 8, 2022.

4

requirements. Ala. Code [1975,] § 41-7A-43; Ala. Admin. Code [(Dep't of Com.,] r. 281-3-1-.06.

"To obtain pre-qualification for incentives, an applicant must submit an application to the Film Office for approval. Ala. Admin. Code [(Dep't of Com.),] r. 281-3-1-.04(1). The application requires the applicant to submit production details, including projected schedules and a description of the qualified production. Ala. Admin. Code [(Dep't of Com.),] r. 281-3-1-.04(1)(a).

"After an application is approved, a production company must notify the Film Office in writing of any changes to the information provided. C. 21-26. Upon completion of production activities in Alabama, the production company must submit a final audit within 120 days. Ala. Admin. Code [(Dep't of Com.),] r. 281-3-1-.06(7). Failure to timely submit the audit results in the forfeiture of incentives. Ala. Admin. Code [(Dep't of Com.),] r. 281-3-1-.06(8)."

The Film Office defendants' brief at 12-13.

In a letter dated January 29, 2024, the Film Office informed War Paint that the Film Office was denying War Paint's financial incentives. In the letter, the Film Office stated that it had not received a timely "Final Incentive Audit and Report" and that War Paint's financial incentives had been forfeited.

War Paint tried over the next several months to persuade the Film Office to change its mind. However, on December 9, 2024, the Film Office

5

issued what it referred to as its "final response" and declined to award financial incentives.

On January 8, 2025, War Paint filed a "Notice of Appeal" with the Alabama Department of Commerce. On February 7, 2025, War Paint filed a "Petition for Judicial Review and Complaint for Declaratory Relief" in the Montgomery Circuit Court. In Count One of its complaint, War Paint sought "Judicial Review under Alabama Code [1975,] § 41-22-20," essentially asking the circuit court to "reverse" the Film Office's decision to deny War Paint's financial incentives. In Count Two, War Paint sought a "Declaratory Judgment under Alabama Code [1975,] § 41-22-10," asking the circuit court to declare that the Film Office's "revocation process (or lack thereof) is invalid and fails to comply with" the Alabama Administrative Procedure Act ("the AAPA"), § 41-22-10 to -27, Ala. Code 1975. The Film Office defendants filed a "Motion to Dismiss" on March 10, 2025, asking the circuit court to dismiss War Paint's complaint on the ground that the AAPA "does not provide subject-matter jurisdiction for [the circuit court] to review the forfeiture of incentives." In their motion, the Film Office defendants argued that this conflict was not a "contested case" under the AAPA and, thus, did not

6

trigger the remedies and procedures available under the AAPA. The Film Office defendants further argued that, even if the issue was subject to the AAPA, War Paint had failed to meet the "strict time requirements to challenge the agency's decision." Finally, the Film Office defendants argued that War Paint's "claims for declaratory relief ... should be dismissed as nonjusticiable."

The Film Office defendants' motion to dismiss came before the circuit court for argument on May 1, 2025. On June 4, 2025, the circuit court entered a judgment granting the Film Office defendants' motion to dismiss. In pertinent part, the judgment provides:

> "[War Paint ('Plaintiff')], a production company, applied for tax incentives to produce a feature film in Alabama. (doc. 2). Plaintiff did not complete the feature film and failed to comply with the statutory and regulatory requirements of the Alabama Department of Commerce ('Commerce'). See Ala. Admin. Code [(Dep't of Com.),] r. 281-3-1-.06(7); see also Ala. Admin. Code [(Dep't of Com.),] r. 281-3-.1-.05. As a result, Commerce notified Plaintiff that any incentives awarded to or set aside for Plaintiff were forfeited. (doc. 14)
>
> "Plaintiff subsequently filed this suit seeking judicial review under the Alabama Administrative Procedure Act ('AAPA'), Ala. Code [1975,] § 41-22-1 et seq., challenging the forfeiture of incentives and seeking declaratory relief against Defendants McNair and Bridgeman. (doc. 14)
>
> "The Court concludes that it lacks subject-matter jurisdiction. The forfeiture of incentives does not constitute a

7

'contested case' under the AAPA and, therefore, is not subject to judicial review. Consequently, Plaintiff was not entitled to a hearing, and the Court lacks subject-matter jurisdiction to review the agency's actions under the AAPA. See Brady v. State Pilotage Comm'n, 208 So. 3d 1136 (Ala. Civ. App. 2015).

"Alternatively, even if the forfeiture of incentives [was] subject to review under the AAPA, Plaintiff failed to follow the procedural requirements of the AAPA. This failure independently deprives the Court of subject-matter jurisdiction. In addition, Plaintiff's claims for declaratory relief against Defendants McNair and Bridgeman are nonjusticiable as no justiciable controversy existed at the time the Complaint was filed. See Underwood v. Alabama State Bd. of Educ., 39 So. 3d 120, 127 (Ala. 2009).

"Accordingly, it is hereby ORDERED that [the Film Office defendants'] Motion to Dismiss for lack of subject-matter jurisdiction is GRANTED and that this case is DISMISSED. This is a final judgment."

(Capitalization in original.) War Paint timely appealed the judgment on July 16, 2025.

We first review the circuit court's determination that it did not have subject-matter jurisdiction to consider War Paint's complaint. In reviewing that decision, we are guided by the principle that "'"'[m]atters of subject-matter jurisdiction are subject to de novo review.'"'" Hawkins v. Ivey, 365 So. 3d 1058, 1060 (Ala. 2022) (citations omitted); Alabama Med. Cannabis Comm'n v. Alabama Always, LLC, [Ms. CL-2024-0588, Mar. 7, 2025] ___ So. 3d ___, ___ (Ala. Civ. App. 2025) ("'[W]e review de

8

novo whether the trial court had subject-matter jurisdiction.'" (quoting Solomon v. Liberty Nat'l Life Ins. Co., 953 So. 2d 1211, 1218 (Ala. 2006))). Furthermore, "no presumption of correctness" attaches to the circuit court's "dismissal" on that basis. Hudson v. Ivey, 383 So. 3d 636, 639 (Ala. 2023).

War Paint argues on appeal that the circuit court erred when it determined that the Film Office's decision to deny War Paint's claim for financial incentives was not subject to the AAPA. War Paint further claims that this issue qualifies as a "contested case" and that it was entitled to certain protections under the AAPA, such as a hearing at which it could present its response to the Film Office's adverse decision.

According to War Paint, the Film Office was required to treat this issue as a contested case under the AAPA because the awarding of financial incentives to make its movie was the equivalent to the issuance of a license. If the award of financial incentives was, in fact, the issuance of a license, then the forfeiture of the financial incentives, i.e., the revocation of the "license," created a contested case under the AAPA. The Film Office defendants argue to the contrary, stating that this issue did not create a contested case and that

9

"War Paint incorrectly argues that its forfeiture of incentives is a 'license' under the AAPA.

"War Paint seeks to artificially expand the definition of 'license' beyond what this Court or any court in Alabama has ever done solely to avail itself of the AAPA's bundle of rights afforded to parties to a 'contested case' under the AAPA. However, such an expanded definition of 'license' is contrary to the AAPA's plain meaning."

The Film Office defendants' brief at 24.

We agree with the Film Office defendants that the interpretation of the definition of a "license" War Paint seeks would be contrary to the plain meaning of that term and that the circuit court was correct in rejecting that as a basis to apply the AAPA to this dispute. A contested case under the AAPA is defined as "[a] proceeding, including but not restricted to ratemaking, price fixing, and licensing, in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing." § 41-22-3(3), Ala. Code 1975. In an attempt to avail itself of the rights and procedures under the AAPA, War Paint argues the novel idea that the financial incentives offered under the Act were the equivalent of the state issuing

a license.[4] Thus, the argument goes, when the incentives were denied, it was tantamount to a revocation of that license, thereby triggering the contested-case procedures of the AAPA.

Is the granting of financial incentives a license? The AAPA defines a license as "[t]he whole or part of any agency franchise, permit, certificate, approval, registration, charter, or similar form of permission required by law, but not a license required solely for revenue purposes when issuance of the license is merely a ministerial act." § 41-22-3(4). The commentary to that statute provides a further explanation of the term license by stating that "[t]he definition of a 'license' is intended to include any form of permission required by law for which there are substantive requirements to be met." Commentary to § 41-22-3, Ala. Code 1975. As further context, Black's Law Dictionary provides that a license is "[a] privilege granted by a state or city upon the payment of a fee, the recipient of the privilege then being authorized to do some act or series of acts that would otherwise be impermissible." Black's Law Dictionary 1101 (12th ed. 2024).

---

[4]The use of the term "novel" is not superfluous. War Paint has not directed us to any authority that has labeled the award of financial incentives by the state a "license."

The common theme in these definitions is the concept of "permission." That is, a license is almost always associated with permission to do something that, without the license, would not be allowed. As the Film Office defendants argue, correctly in our opinion,

> "a 'license' under the AAPA does not encompass every agency approval, but only those permissions that operate as <u>permission</u> to engage in conduct that would otherwise be prohibited by law. <u>See,</u> e.g., Ala. Code [1975,] §§ 32-6-1 (license to operate a motor vehicle); 34-3-1 (license to practice law) (where such licenses authorize conduct that would be unlawful without permission)."

The Film Office defendants' brief at 25-26 (emphasis in original).

It follows then that the financial incentives offered under the Act do not meet the definition of a license, both as the term is commonly understood and as defined by the AAPA. War Paint's right to film a movie in Alabama was in no way dependent on the financial incentives offered by the Film Office. Presumably, War Paint could have filmed its entire movie without ever applying for or receiving any financial incentives from the state. In other words, the Film Office's role in this matter was not to grant permission to film in Alabama, it was to incentivize War Paint to film in Alabama. Permission to engage in the activity was never

12

an issue. The square peg of discretionary financial incentives will simply not fit in the round hole of a license.

This court faced a similar issue regarding the applicability of the AAPA in <u>Brady v. State Pilotage Commission</u>, 208 So. 3d 1136 (Ala. Civ. App. 2015). Brady was an apprentice on track to become a local ship captain operating in Mobile Bay. The licensing of such ship captains is regulated by the State Pilotage Commission ("the commission"). The commission discharged Brady from his apprenticeship. After unsuccessfully attempting to get the commission to reinstate him, Brady appealed the commission's decision to the Mobile Circuit Court, which dismissed the appeal for lack of subject-matter jurisdiction. Brady then appealed to this court. <u>Brady</u>, 208 So. 3d at 1137-38. One of the issues in that case was whether Brady was entitled to the procedures provided in the AAPA to address his discharge by the commission. This court determined that the AAPA was not available to Brady and stated the following:

> "This case does not involve a licensing issue, and there is no legal requirement that the commission may determine Brady's legal rights, duties, or privileges only after providing him with an opportunity for a hearing. Thus, we conclude that the commission's action in removing him from the list of bar-pilot apprentices did not constitute a contested case for the

13

purposes of the AAPA. As the circuit court pointed out, Brady's rights in this case were limited to those found in [Ala. Code 1975,] § 33-4-33,[5] which allowed him to appeal only to the commission. Accordingly, we conclude that the circuit court did not err in determining that this was not a contested case under the AAPA."

Id. at 1142.

The Act leaves the responsibility for determining compliance with the incentive program with the Film Office. The Film Office decided that War Paint had failed to meet the conditions required to obtain the incentives. It is undisputed that, before making that final decision, the Film Office granted War Paint multiple opportunities to present its argument that the incentives should be reinstated. To apply the AAPA to this conflict would be tantamount to ruling that any person disappointed with any state-agency decision could force the agency to comply with the AAPA to carry out that decision. We decline to extend the application of the AAPA in this way in the absence of a clear statutory directive to do so.

---

[5]Sections 33-4-30 through 33-4-57, Ala. Code 1975, were repealed by Act 2026-18, § 1, Ala. Acts 2026, effective June 1, 2026. That statute is unrelated to the analysis in this case.

War Paint also sought a declaratory judgment in Count II of its complaint. That count cited § 41-22-10, Ala. Code 1975, as authority for the claim and contained the following relevant paragraphs:

"40. There is no established process under which War Paint can challenge the revocation. This lack of process violates the AAPA -- the Alabama law enacted to ensure that state agencies provide minimum due process. See Ala. Code [1975,] § 41-22-2(a) & (b)(1)c.

"41. Under the AAPA, agencies with rulemaking power (like the Department and its Film Office) must comply with certain procedural requirements when taking certain actions, including, among other things, when granting, denying, or revoking a 'license,' which the AAPA defines as '[t]he whole or part of any agency franchise, permit, certificate, approval, registration, charter, or similar form of permission required by law.' See [Ala. Code 1975,] §§ 41-22-19, 41-22-3(3) (emphasis added). When the Film Office approved War Paint's application for tax incentives, it issued War Paint a license as defined by the AAPA.

"42. Under the AAPA, when an agency seeks to deny or revoke a license, the agency must give notice explaining why it intends to revoke the license and must provide an 'opportunity for a hearing' on the issue in a contested case proceeding. [Ala. Code 1975,] § 41-22-12(a). Indeed, 'no revocation, suspension, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by certified mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license.' [Ala. Code 1975,] § 41-22-19 (emphasis added).

"43.  Before an agency can revoke a license, the AAPA requires the agency to serve notice on the licensee with a 'short and plain statement of the matters asserted' -- the reasons for the revocation. [Ala. Code 1975,] § 41-22-12(b). Then, a hearing must occur and '[o]pportunity [must] be afforded all parties to respond and present evidence and argument on all material issues involved and to be represented by counsel at their own expense.' [Ala. Code 1975,] § 41-22-12(e).

"44. The Film Office has no such procedure that complies with the AAPA. It has no rules of practice or procedure. It never gave notice that it intended to revoke War Paint's approval as required by the AAPA. And it never held a hearing at which War Paint could present evidence and argument. It simply revoked War Paint's tax incentives approval in violation of the AAPA.

"FOR THESE REASONS, War Paint asks this Court for a declaration under the AAPA and the Alabama Declaratory Judgment Act that the Film Office's revocation process (or lack thereof) is invalid and fails to comply with the AAPA."

(Capitalization in original.) The Film Office defendants argued, and the circuit court agreed, that this count did not allege a "justiciable controversy ... at the time the Complaint was filed."

We begin by analyzing the circuit court's conclusion that the conflict in this case was not a justiciable controversy. "For a court to grant declaratory relief, it must have before it a bona fide, presently existing justiciable controversy that affects the legal rights or obligations of the parties." Hunt Transition & Inaugural Fund, Inc. v. Grenier, 782 So. 2d

16

270, 272 (Ala. 2000). A fair assessment of the issue before the circuit court would suggest that the parties are in a controversy regarding whether the Film Office properly cancelled War Paint's financial incentives to film a movie in Alabama. The Film Office defendants argue that War Paint failed to comply with the terms of the award of financial incentives and that this "noncompliance left no live controversy for judicial resolution." The Film Office defendants' brief at 38. However, one could easily argue that War Paint's noncompliance with the Act's requirements <u>is the controversy</u>. On the other hand, if the AAPA does not apply to this conflict, the circuit court would lack subject-matter jurisdiction, and there would be no justiciable controversy before the circuit court. <u>See</u> <u>Ex parte Alabama State Bd. of Chiropractic Exam'rs</u>, 11 So. 3d 221 (Ala. Civ. App. 2007) (holding that state agency and board members sued in official capacities would be entitled to absolute immunity unless claims fell under § 41-22-10). The issue, then, seems to be: Is there a field of operation for the AAPA to apply to this conflict outside War Paint's "license revocation" argument? War Paint argues that there is a second basis to force the Film Office to comply with the AAPA:

> "The AAPA grants plaintiffs the right to seek declaratory relief when an agency rule interferes with,

17

> impairs, or threatens to interfere with or impair the plaintiff's legal rights or privileges. Ala. Code [1975,] § 41-22-10. The AAPA is also explicit that the revocation of a license is a contested case that, by definition, interferes with a plaintiff's legal rights. [Ala. Code 1975,] §§ 41-22-3, 41-22-19(a). Consequently, War Paint had a statutory right to bring a declaratory judgment action seeking to invalidate the Film Office's processes (or lack thereof) for reviewing the revocation of incentives. That is exactly what War Paint did."

War Paint's brief at 31.

We disagree. First, the argument made by War Paint seems to be grounded on its position that the granting of financial incentives is a license and the forfeiture of those incentives was the revocation of a license. Therefore, according to War Paint, "the revocation of a license is a contested case that, by definition, interferes with a plaintiff's legal rights." Id. That may be true as far as it goes, but, as discussed, the forfeiture of financial incentives is not the revocation of a license. If the Film Office's actions are not considered to be the revocation of a license, then War Paint's justification underpinning its petition for a declaratory judgment pursuant to § 41-22-10 fails.

In addition, the plain language of the statute limits its application to judicial scrutiny of a "rule."

> "The validity or applicability of a rule may be determined in an action for a declaratory judgment or its enforcement stayed

18

by injunctive relief in the circuit court of Montgomery County, unless otherwise specifically provided by statute, if the court finds that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The agency shall be made a party to the action. In passing on such rules the court shall declare the rule invalid only if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was adopted without substantial compliance with rulemaking procedures provided for in [the AAPA]."

§ 41-22-10 (emphasis added).[6]

A rule is defined in relevant part by the AAPA as follows:

"Each agency rule, regulation, standard, or statement of general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure, or practice requirements of any agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule or by federal statute or by federal rule or regulation."

§ 41-22-3(9), Ala. Code 1975.

Thus, to invoke the jurisdiction of the circuit court for a declaratory judgment, War Paint must point to an "agency rule, regulation, standard, or statement of general applicability." Id. Instead, War Paint seeks a judgment from the circuit court invalidating "the Film Office's processes

---

[6]This section has been amended by the Legislature effective September 30, 2026.

19

(or lack thereof) for reviewing the revocation of incentives." War Paint's brief at page 31. What is missing from War Paint's complaint is any direct reference to a rule that it wishes to hold up to the scrutiny allowed by a petition filed under § 41-22-10.

This court examined the parameters of the definition of a rule in <u>Keith v. LeFleur</u>, 400 So. 3d 608 (Ala. Civ. App. 2023). At issue in <u>Keith</u> was an Alabama Department of Environmental Management ("ADEM") memorandum establishing a grievance procedure for claims of discrimination. <u>Keith</u>, 400 So. 3d at 611-12. One of the issues in that case was whether the memorandum was a "rule" and thus subject to a declaratory-judgment action pursuant to § 41-22-10. <u>Id.</u> at 616. In resolving this issue, this court stated:

> "The AAPA, which governs the procedure for all state agencies, <u>see</u> Ala. Code 1975, § 41-22-2(a), generally defines the term 'rule' to include 'each agency regulation, standard, or statement of general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure, or practice requirements of any agency,' Ala. Code 1975, § 41-22-3(9). … The directives contained within the November 5, 2018, memorandum are not merely guidelines or recommendations on how to process discrimination grievances; the director uses mandatory terms throughout that memorandum to establish uniform grievance procedures that ADEM is bound to follow in every case. <u>See</u> <u>Families Concerned About Nerve Gas Incineration v. Alabama Dep't of Env't Mgmt.</u>, 826 So. 2d 857, 864 (Ala. Civ.

20

App. 2002) (noting that court shall consider intent of agency to be bound by standard in deciding whether that standard is a rule within the meaning of the AAPA). Every characteristic of the November 5, 2018, memorandum falls neatly within the general definition of a 'rule' contained within the AAPA. See also Ala. Code 1975, § 41-22-4(a)(2) (requiring each administrative agency to '[a]dopt rules of practice setting forth the nature and requirements of all formal and informal procedures available'); Ex parte Traylor Nursing Home, Inc., 543 So. 2d 1179, 1183 (Ala. 1988) (recognizing that a rule need not concern substantive law, but may be entirely procedural in nature and concluding that an amendment to the state health plan was a procedural rule because it established a mandatory methodology for obtaining a certificate of need)."

Keith, 400 So. 3d at 617-18.

The memorandum described in Keith stands in stark contrast to the "rule" under attack in this case. As noted above, the memorandum used mandatory language, and, as this court concluded, "[e]very characteristic of the November 5, 2018, memorandum [fell] neatly within the general definition of a 'rule' contained within the AAPA." Id. at 618. To risk stating the obvious, no rule has been identified by War Paint for the circuit court to review. Cf. Medical Ass'n of State of Alabama v. Shoemake, 656 So. 2d 863, 864 n.1 (Ala. Civ. App. 1995) ("The administrative rule in question is Rule 700-X-3-.02."). In short, War Paint has failed to point to any Film Office action that would fall "neatly within the general definition of a 'rule.'" Keith, 400 So. 3d at 618. See Health

21

Care Auth. of Athens v. Statewide Health Coordinating Council, 988 So. 2d 574 (Ala. Civ. App. 2008) (holding that an adjustment to an acute-care-bed needs assessment was <u>not</u> a rule subject to § 41-22-10).

War Paint has failed to establish (or plead) that the Film Office has adopted a rule that would be subject to scrutiny under § 41-22-10. Therefore, War Paint's complaint did not present a justiciable conflict. See <u>Dalton Drug Co. v. OptumRx, Inc.</u>, 424 So. 3d 1254, 1259 (Ala. 2025) ("'[I]f no justiciable controversy exists when the suit is commenced, then the court lacks jurisdiction' to take any action in that case." (quoting <u>Durham v. Community Bank of Marshall Cnty.</u>, 584 So. 2d 834, 835 (Ala. 1991))).

War Paint argues in its brief that the Film Office's decision in this case, if allowed to stand, will severely hamper the film industry in the state. According to War Paint, production companies will seek film opportunities in other states with more favorable film-production policies. War Paint's brief at 3-4. That may well be true. However, not every dispute with a state agency invokes the procedural requirements of the AAPA. To so hold would cripple the decision-making process of state agencies and create disfunction in the administration of state

22

government. See Families Concerned About Nerve Gas Incineration v. Alabama Dep't of Env't Mgmt., 826 So. 2d 857, 867 (Ala. Civ. App. 2002) ("'While it is true that the [Washington] APA is designed to provide "greater public and legislative access to administrative decision making," we believe it is equally true that the [Washington] APA's provisions were not designed to serve as the straitjacket of administrative action.'" (quoting Budget Rent A Car Corp. v. State Dep't of Licensing, 144 Wash. 2d 889, 898, 31 P.3d 1174, 1178 (2001))). In this case, War Paint has failed to demonstrate that the procedures available under the AAPA apply to the Film Office's actions in denying it the financial incentives under the Act. Therefore, we affirm the circuit court's decision to dismiss this case. If the Film Office's decision in this case negatively impacts the state's film industry, then that is for the legislature, not the courts, to address. "It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the law is, not to say what it should be." DeKalb Cnty. LP Gas Co. v. Suburban Gas, Inc., 729 So. 2d 270, 276 (Ala. 1998).

AFFIRMED.

Edwards and Hanson, JJ., concur.

Moore, P.J., concurs in the result, without opinion.

Fridy, J., recuses himself.